J-S16045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD TERELL STOCKTON | : | |
| | : | |
| Appellant | : | No. 1509 MDA 2024 |

Appeal from the PCRA Order Entered September 26, 2024
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s):  CP-31-CR-0000254-2014

BEFORE:  LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LANE, J.:                     **FILED: JULY 1, 2025**

Ronald Terell Stockton ("Stockton") appeals from the order dismissing his fourth petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

In 2013, Stockton left his prison cell after a correctional officer accidentally opened the wrong set of cell doors.  Because Stockton ignored multiple orders to return to his cell, a correctional officer approached him and attempted to place him in handcuffs.  In response to this attempt, Stockton took a defensive stance, pushed the officer away, and threw multiple punches to the officer's head and neck area.  As other officers stepped in to assist, Stockton kicked at them as well, and continued to do so until a total of five officers were able to subdue him.  The Commonwealth subsequently charged Stockton with multiple counts of aggravated and simple assault.

---

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

At jury selection, the trial court directed the Commonwealth to permit both Stockton and his counsel to review any/all videotapes that it had in its possession regarding the incident. The court thereafter scheduled trial for two weeks from that date. Six days later, Stockton filed, *inter alia*, a petition for writ of *habeas corpus* and a motion for an emergency hearing. In this petition, Stockton maintained that the videotape footage that he and his counsel were only recently able to view directly undermined the affidavit of probable cause supporting the Commonwealth's criminal complaint. Specifically, Stockton asserted that a correctional officer's statement that Stockton "leaped toward him and struck him in the face and neck area with a closed fist several times" was contradicted by video footage that "definitively show[ed] that [Stockton] did not leap at [the officer], nor at any of the officers involved[, and that it instead indicated] that any action taken by [Stockton] was for the purpose of self-defense, and not with the intent of assaulting any of the officers." Petition for Writ of *Habeas Corpus*, 9/8/14, at unnumbered 1.

The trial court conducted a hearing on the petition, and for purposes of this appeal, we provide the following relevant excerpts:

> [Trial Court]: . . . Now the record is closed then on the *habeas*, and . . . Stockton, I will give you the option, if you want, to place some things on the record. That's fine. Or if you want to talk to your counsel first, that's fine too.
>
> [Stockton]: I would like to place some things on the record, Your Honor.
>
> [Trial Court]: Go ahead.

- 2 -

[Stockton]: ***The evidence presented that we watched was partial footage, and it was not all of the Commonwealth's evidence. I did get some evidence subpoenaed for the preliminary hearing, but the Commonwealth failed to bring forth that evidence*** as well as my witnesses. And this is not a credibility issue. It's due to the lack of evidence.

\* \* \* \*

[Stockton]: I wanted to call witnesses in my defense as well as you can see some of the subpoenas it doesn't just state security; it states the procedure and mechanism from the door. It states the camera footage. They denied [trial counsel] a right to have a copy of the camera footage to prepare an adequate defense.

[Trial Court]: Well certainly [trial counsel] has a right to raise those issues at trial. And that will go to a jury. If they can't prove their case or the jury thinks that they are hiding something or that the cameras are set up wrong, I would assume that the jury will take that into consideration. That's why we have a jury.

[Stockton]: Yes, Your Honor. I have an order I just received [that trial counsel] sent to me that stated that if the . . . Commonwealth did not present all camera footage relevant to this incident then the case would be dismissed.

[Trial Court]: [Commonwealth], did you present all of the camera footage evidence in your possession?

[Commonwealth]: Yes.

[Trial Court]: They have everything you have?

[Commonwealth]: They have everything we have. And we turned over today footage after the incident from a hand-held camera.

[Trial Court]: Anything else [Stockton]?

[Stockton]: Yes. [Trial counsel] just informed me the DA told me while we were looking at the footage that we could not have a copy.

[Trial Court]: What would you do with the copy of the footage in your cell?

[Stockton]: Not me.  My attorney requested a copy of the footage.

[Trial Court]: [Trial counsel], have you seen the video?

[Trial Counsel]: Yes.

[Trial Court]: Have you seen all the videos?

[Trial Counsel]: Yes.

[Trial Court]: Did [the Commonwealth] give you as much time as you needed to view the videos?

[Trial Counsel]: Yes.

[Trial Court]: You were able to play them back and see them over and over as many times as you wanted?

[Trial Counsel]: I have, Your Honor.

[Trial Court]: Anything else, . . . Stockton?

[Stockton]: Yes.  If you look on the outside, **when we were there, there were four videos present**.  Now there are two CDs, and the time[]lines to the CDs they burned start at 11:00 o'clock.  They start at 11:04 and 11:15.  But the incident documented ended at 10:51.

[Trial Court]: [Commonwealth], I assume you will be authenticating them at trial.

[Commonwealth]: Yes.

N.T., 9/11/14, at 5-6, 9-11 (emphasis added).  The trial court thereafter denied Stockton's petition.

At trial, a jury convicted Stockton of one count of aggravated assault, and on November 13, 2014, the trial court imposed a sentence of twenty-seven to 100 months' incarceration.  This Court affirmed the judgment of

sentence, and on April 20, 2016, our Supreme Court denied allowance of appeal. *See Commonwealth v. Stockton*, 135 A.3d 650 (Pa. Super. 2015) (unpublished memorandum), *appeal denied*, 138 A.3d 4 (Pa. 2016). Stockton did not file a petition for review in the United States Supreme Court.

Stockton subsequently filed three PCRA petitions. In his second such petition, Stockton acknowledged that it was untimely, but urged the PCRA court to consider "actual innocence" and "miscarriage of justice" as exceptions to the PCRA's time bar. *Commonwealth v. Stockton*, 224 A.3d 795 (Pa. Super. 2019) (unpublished memorandum at *2). The PCRA court dismissed Stockton's petition as untimely, and this Court affirmed, noting that Stockton did not plead or prove any cognizable exception to the PCRA's timeliness requirements, and that "neither 'actual innocence' nor 'miscarriage of justice' are viable PCRA timeliness exceptions." *Id*. (unpublished memorandum at *2).

In his third PCRA petition, Stockton once more acknowledged that his petition was untimely, but argued that he satisfied the newly-discovered facts exception. In doing so, Stockton maintained that he received new evidence consisting of copies of disciplinary records for two corrections officers involved in the underlying incident. These records revealed that each of the officers received verbal reprimands, one for prematurely turning off a video camera that was recording the incident, and the other for using inappropriate language while trying to restrain Stockton. Stockton asserted that because "these materials were withheld from discovery, [they therefore] show[ed] that

[the officer] tampered with the video evidence that was used at trial." **Commonwealth v. Stockton**, 256 A.3d 2 (Pa. Super. 2021) (unpublished memorandum at *2). Stockton claimed that absent such tampering, this evidence would have shown an officer stating "[w]e can fuck him up in the cell, it's no camera in there." **Id**. (unpublished memorandum at *2). The PCRA court dismissed the petition as untimely, and this Court affirmed, reasoning that Stockton failed to satisfy the newly-discovered facts exception as he was aware of both the verbal reprimands and the video's premature endpoint at the time of trial. **See id**. (unpublished memorandum at *2-3).

On December 4, 2023,[2] Stockton filed the instant *pro se* petition, his fourth. Although Stockton conceded that his petition was untimely, he argued that his recent discovery of exculpatory video evidence satisfied the newly-

_____

[2] The certified docket reflects that the petition was received and docketed on December 4, 2023. In his brief, Stockton claimed that he mailed his petition on November 28, 2023, and that we should thus consider it as filed on this date in accordance with the "prisoner mailbox rule." **Commonwealth v. Chambers**, 35 A.3d 34, 39-40 (Pa. Super. 2011) (applying the "prisoner mailbox rule" to a PCRA petition); *see also Commonwealth v. Little*, 716 A.2d 1287, 1289 (Pa. Super. 1998) (explaining that because the "prisoner mailbox rule" applies to PCRA petitions, it considered the appellant's petition as filed on the date of its delivery to the proper prison authority or to a prison mailbox). However, aside from Stockton's handwritten notation of this date on the petition itself, our review of the record shows that he did not include any official documentation from the prison or the postal service indicating the date on which he actually placed the petition in the hands of prison officials or in the prison mailbox. **See Commonwealth v. Jones**, 700 A.2d 423, 426 (Pa. 1997) (instructing that to avail himself of the "prisoner mailbox rule," the *pro se* prisoner bears the burden to prove the date in which he delivered a document for filing to prison authorities). Accordingly, we decline to apply the "prisoner mailbox rule" to Stockton's petition and thus treat it as filed on December 4, 2023. **See id**.

discovered facts exception to the PCRA's one-year time bar. Specifically, Stockton asserted that the Commonwealth previously withheld this video footage in violation of **Brady v. Maryland**, 373 U.S. 83 (1963), and that had it been available, it would have shown that multiple correctional officers provided false reports and testimony at trial.[3]

The PCRA court issued a notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907, finding that it was untimely without meeting any exception to the PCRA's timeliness requirements. On September 26, 2024, after having received no response, the PCRA court dismissed the petition. Stockton filed a timely notice of appeal, and both he and the PCRA court complied with Pa.R.A.P. 1925.[4]

Stockton raises the following issues for our review:

1. Whether [Stockton] has timely filed what is categorized as Fourth PCRA within one year of receipt of evidence which was not viewed by [him] until December 2, 2022, as verified by [Stockton] and C.O. - Minich, and PCRA (Fourth) was mailed in accordance to the

---

[3] Although Stockton subsequently filed three supplemental PCRA petitions, our review of the record shows that the PCRA court never granted him leave to supplement or amend his original *pro se* petition. Accordingly, neither the PCRA court nor this Court have jurisdiction to consider those filings. **See** Pa.R.Crim.P. 905(A) (explicitly stating that amendment is permitted only by direction or leave of the PCRA court); **see also Commonwealth v. Porter**, 35 A.3d 4, 12 (Pa. 2012) (concluding that a subsequent petition, even though labeled "supplement and amendment[,]" did not constitute an amended petition where "there [was] no indication that appellant ever requested, or that the PCRA court ever granted, leave to amend the [original] petition").

[4] In its 1925(a) opinion, the PCRA court incorporated by reference the reasoning that it set forth in its opinion accompanying its notice of its intent to dismiss.

mail[]box rule on November 28, 2023, that could show [Stockton] is actually innocent?

2. Whether [Stockton] has shown governmental interference by the prosecution withholding exculpatory evidence favorable to [him], that could potentially show [he] is actually innocent and deprived [Stockton] of a fair trial, in which, the court has interfered as well, and altered [the] 9-11-[14 transcript] (no numbered lines, etc.) and is summarized, and denied [Stockton] access to [a] video that was subpoenaed evidence at 9-11-14, tr. ("Exhibit-E") as C.O.'s false testimony was the only evidence utilized to obtain a conviction?

3. Whether [trial] counsel was ineffective.

Stockton's Brief at 4 (unnecessary capitalization omitted).

Our standard of review of an order dismissing a PCRA petition is well-settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Under the PCRA, any petition, including a second or subsequent petition, must be filed within one year of the date the judgment of sentence becomes final. *See* 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final

at the conclusion of direct review, including discretionary review in the Supreme Court of the United States, or at the expiration of time for seeking review. *See* 42 Pa.C.S.A. § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *See Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010).

On April 20, 2016, our Supreme Court denied Stockton's petition for allowance of appeal from his judgment of sentence. As Stockton did not petition the United States Supreme Court for review, his judgment of sentence became final ninety days later, on July 19, 2016. *See* U.S. Sup. Ct. R. 13 (stating appellant must file a petition for writ of *certiorari* in the United States Supreme Court within ninety days after entry of judgment by a state court of last resort). As a result, Stockton had one year from that date, until July 19, 2017, to timely file a PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1). As Stockton filed the instant petition on December 4, 2023, it is facially untimely.

Nevertheless, Pennsylvania courts may consider an untimely PCRA petition if the petitioner explicitly pleads and proves one of three exceptions set forth under section 9545(b)(1). These exceptions are as follows:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). Our Supreme Court has emphasized that "it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." *Commonwealth v. Marshall*, 947 A.2d 714, 719 (Pa. 2008) (citation omitted).

In his first issue, Stockton argues that his petition meets the newly-discovered facts exception because he recently viewed exculpatory "footage that was subpoena[ed] . . . to be brought forth [at his] preliminary hearing, [but that] was never brought forth" by the Commonwealth in violation of *Brady*. Stockton's Brief at 9, 11 (unnecessary capitalization omitted). Stockton clarifies that leading up to his trial, the Commonwealth only provided him and his counsel access to three videos capturing the underlying incident. Accordingly, he claims that because he only discovered this fourth video on November 30, 2022, as a result of the office of the attorney general sending it to him in relation to a separate civil lawsuit pertaining to the underlying incident, his petition filed within one year of this date satisfied the newly-discovered facts exception.

The PCRA court considered Stockton's first issue and determined that it was without merit, reasoning as follows:

[Stockton's] newly[-]discovered evidence claim fails for at least two reasons. First, it is not clear that it is actually "newly[-]discovered evidence." The letter from [the attorney general's office that informed Stockton of this video] does specify that the video is "additional video footage located from December 20, 2013," and [Stockton] alleges that there [were] three videos included in the evidence log prior to trial. Thus, the implication is that the video in question is a heretofore unknown fourth video. But at the September 11, 2014 *habeas corpus* hearing, [Stockton] himself stated that the log showed that there were four videos, and claimed that the fact that they were presented on only two DVDs (along with other alleged deficiencies) showed that the Commonwealth was both withholding evidence and had "doctored" the recordings.

\* \* \* \*

. . . [Stockton's] extraneous claims that the videos had been manipulated and that the number of discs represented the total number of videos aside, this shows that: (1) [Stockton] knew there were four videos prior to trial; and (2) both [Stockton] and [his attorney] had reviewed all four videos. The reasonable inference, then, is not that the video referenced by [Stockton] is actually newly[-]discovered evidence within the context of the instant criminal matter, but that it was "additional" evidence in relation to his civil suit, and had not previously been included by the Office of the Attorney General in discovery in that matter.

Order and Opinion, 9/5/24, at 6-8 (citations omitted).

After review, we conclude that the PCRA court's determination that Stockton failed to satisfy the newly-discovered facts exception is supported by the record and free from error or abuse of discretion. Initially, we note that Stockton's discovery of the underlying footage cannot satisfy the newly-discovered facts exception, as he failed to raise a claim within one year of its

- 11 -

discovery. Pertinently, Stockton maintained that he was unaware of the video at-issue until the office of the attorney general sent it to him on November 30, 2022. Accepting this as true, Stockton had until November 30, 2023, to timely raise a claim resulting from the discovery of this footage. *See* 42 Pa.C.S.A. § 9545(b)(2) (stating that any petition attempting to invoke a timeliness exception "shall be filed within one year of the date the claim could have been presented"). Accordingly, because we determined *supra* that Stockton filed his *pro se* petition on December 4, 2023, more than one year after the date he purportedly discovered this footage, we conclude that he failed to timely raise the newly-discovered facts exception.[5]

Moreover, our review of the record shows that Stockton was aware of this footage as early as September 11, 2014, when he raised the same **Brady** claim during the pretrial hearing on his *habeas corpus* petition. *See* N.T., 9/11/14, at 5-6. Notably, Stockton argued that he believed the Commonwealth only showed him and his attorney partial footage of the alleged assault, but later admitted that it had made all **four** videos available to him and his attorney. *See id*. at 5-6, 11. Indeed, Stockton concedes this point in his appellate brief, as he emphasized therein that he alerted the trial court of the fourth video's absence during this hearing. *See* Stockton's Brief

---

[5] We note that our conclusion would be the same even if this Court were to determine that Stockton first "discovered" this video when the prison allowed him to view its contents, as Stockton viewed the footage only two days later on December 2, 2022.

- 12 -

at 5.  Thus, because Stockton's petition fails to satisfy the newly-discovered facts exception, we conclude that his first issue is without merit.

For his second issue, Stockton asserts that his petition satisfied the governmental interference exception to the PCRA's one-year time bar. However, our review of Stockton's *pro se* petition shows that he did not plead, much less prove, this timeliness exception anywhere within the petition. Accordingly, because the burden was on Stockton to plead and prove that the governmental interference exception applied, and because he did not do so, we conclude his second issue is waived.  **See Marshall**, 947 A.2d at 719.

As we determine that Stockton's fourth petition was untimely filed and that he failed to satisfy any exception to the PCRA's one-year time bar, neither this Court nor the PCRA court had jurisdiction to address it.  **See Albrecht**, 994 A.2d at 1093 (stating a court may not address the merits of the issues raised in an untimely filed PCRA petition).  Thus, we lack jurisdiction to consider the merits of Stockton's third issue,[6] and we affirm the PCRA court's order dismissing the petition.

Order affirmed.

_____

[6] We additionally note that Stockton did not raise his third issue, regarding trial counsel's ineffectiveness, in his original *pro se* petition, and instead raises it for the first time on appeal.  Accordingly, even if Stockton had properly invoked the PCRA court's jurisdiction by satisfying a timeliness exception, we would have concluded that the issue is waived.  **See** Pa.R.A.P. 302(a) (providing that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/01/2025